## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSHALYN DARDEN,** *individually and on behalf of others similarly* *situated*,         **Plaintiff,**    **v.**    **COLBEA ENTERPRISES, L.L.C., and ANDREW DELLI CARPINI,**    **Defendants.** | **Civil Action No. 23-11540-BEM** |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MURPHY, J.**

Plaintiff Joshalyn Darden ("Ms. Darden") brings this action against Defendants Colbea Enterprises, L.L.C. ("Colbea") and Andrew Delli Carpini ("Mr. Carpini") (collectively, "Defendants"), alleging violations of the Massachusetts Wage Act ("the Wage Act") (Counts I and III), the Fair Labor Standards Act (the "FLSA") (Count II), and for common law breach of contract (Count IV) and unjust enrichment (Count V). The Court previously granted conditional certification of Ms. Darden's FLSA claim, defined as:

> All individuals currently or formerly employed by Colbea Enterprises LLC as hourly employees in Massachusetts who were subject to its time rounding practice relative to tracking employees' work time.

*See* Dkts. 18, 31. The core claim is that Defendants engaged in improper "time shaving," which resulted in employees not receiving their full earned wages and working uncompensated overtime.

Before the Court now is Defendants' motion for summary judgment ("Defendants' Motion"). For the reasons set forth below, Defendants' Motion is GRANTED.

I.    **Background**

  A.    **Factual Background**

The parties largely agree on the material facts of this case. *See generally* Dkt. 108 ("Pl.'s Resp. to Defs.' SOF"). Colbea owns convenience stores throughout Massachusetts and employs Mr. Carpini as an authorized chief executive overseeing operations of the convenience stores. *Id.* ¶¶ 1–2. Ms. Darden was hired around May 2022 as a cashier in one of the Massachusetts stores. *Id.* ¶ 3. To track employees' time, all hourly employees recorded their working time in an automated digital system administered by a third party. *Id.* ¶ 5. This system automatically rounded time entries to the nearest quarter hour. *Id.* ¶ 6. For instance, clock entries between 9:01 and 9:07 were rounded back to 9:00. *Id.* ¶ 8. Clock entries between 9:08 and 9:14 were rounded forward to 9:15. *Id.* ¶ 7. Clock entries at 9:00, 9:15, 9:30 or 9:45 were not rounded. *Id.* ¶ 9. This rounding practice applied to both clock-in and clock-out times. *Id.* ¶¶ 7–12.

Between June 8, 2020, and July 1, 2023, Defendants' third-party payroll administrator retained relevant time-card and payment records for 1,165 Massachusetts hourly employees. *Id.* ¶ 15. After the filing of the Complaint, Defendants conducted an analysis of this data,[1] which found that the rounding practice resulted in a total of 1,287 hours and 22 minutes rounded up compared to 788 hours and 18 minutes rounded down. *Id.* ¶ 16. It is undisputed that examining rounding at the individual punch level demonstrates that 555 out of 1,165 employees, or 47.6% of said employees, benefited from a net gain of time while 72 employees, or 6.2% of employees, were unaffected. *Id.* ¶¶ 17–18. For 538 out of 1,165 employees, or 46.2% of said employees, the time rounding practices resulted in a loss of time. *Id.* ¶ 22. Defendants had never previously tracked, monitored or otherwise analyzed the time rounding results. *Id.* ¶ 41.

---

[1] Ms. Darden does not dispute these calculations. *Id.* ¶¶ 16–25, 27–40.

For the 36 employees analyzed as the FLSA opt-in class, though the scope is disputed, the time-rounding practice resulted in a combined total, in the aggregate, of 41 hours and 40 minutes rounded up and 44 hours and 1 minute rounded down. *Id.* ¶¶ 26–28.  There was an aggregate net total of 2 hours and 21 minutes rounded down for this group, of which 26 hours and 10 minutes (over 59%) of all time rounded down relates to two employees. *Id.* ¶¶ 29–30.  On an employee-by-employee basis, 19 of the 36, or 52.8% of the FLSA class analyzed, gained time and 16 employees, or 44.4%, lost time. *Id.* ¶¶ 32, 34.  Ms. Darden's rounded time falls in the 0.601 percentile of rounding outcomes:  99.399% of the 1,165 analyzed employees who were subject to the time-rounding practice during the relevant time period experienced more beneficial rounding outcomes than Ms. Darden. *Id.* ¶ 40.  It is undisputed that the majority of employees, even those whose time was rounded down, on average experienced only minor variation between their actual clock-in and clock-out times and their rounded times, and the majority of the employees actually gained time or were unaffected as a result of the practice. *Id.* ¶¶ 38–39.

### B. **Procedural Background**

In June 2023, Ms. Darden initiated this action under the Wage Act, the FLSA, and for common law breach of contract and unjust enrichment, alleging nonpayment of wages and overtime wages because Defendants improperly rounded employees' time sheets.  Dkt. 1-1.  Defendants removed the case to this Court.  Dkt. 1.  On February 1, 2024, Ms. Darden filed a motion to conditionally certify her FLSA claim, Dkt. 18, which Defendants opposed on February 15, 2024.  Dkt. 22.  On May 7, 2024, the Court granted conditional certification of Ms. Darden's FLSA claim and ordered Defendants to identify putative collective class members and authorized notice to those members.  Dkt. 31.  Defendants have now moved for summary judgment.  Dkt. 98.  The Court heard oral arguments on March 21, 2025, and took the matter under advisement.

## II.    <u>Standard of Review</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Generally, 'a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.'" *Grogan*, 552 F. Supp. 3d at 145 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Id.* (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotations omitted). After the moving party has "made the requisite showing, the burden shifts to the nonmovant to 'present definite, competent evidence to rebut the motion' and demonstrate that a 'trialworthy issue persists.'" *Id.* (quoting *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008)). In opposing a motion for summary judgment, the non-moving party cannot rest on mere conjecture but must proffer substantive evidence that would enable a reasonable juror to find in its favor. *Anderson*, 477 U.S. at 256; *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841–42 (1st Cir. 1993).

## III.    <u>Analysis</u>

Defendants argue summary judgment is appropriate because both federal and state law permit neutral timeclock rounding, and because they contend the evidence demonstrates that their rounding practices are neutral.

A.    <u>**The Massachusetts Wage Act Permits Timeclock Rounding**</u>

In general, the Wage Act statute requires that employees be paid their "wages earned" within six days of the end of the pay period during which the wages were earned (with some exceptions). Mass. Gen. Laws ch. 149, § 148. The purpose of § 148 is to "protect employees and their right to wages." *Electronic Data Sys. Corp. v. Att'y Gen.*, 454 Mass. 63, 70 (2009); *see also Reuter v. City of Methuen*, 489 Mass. 465, 471 (2022) ("[Massachusetts courts] have always recognized [the Wage Act] was intended for the protection of employees, who are often dependent for their daily support upon the prompt payment of their wages." (internal quotation marks and citation omitted)). Defendants contend that Massachusetts regulations[2] permit time rounding to the nearest fifteen-minute increment where the practice is neutral, and that this regulation applies to the Wage Act. Dkt. 99 ("Defs.' Memo.") at 4–5. Ms. Darden argues that because 454 Mass. Code Regs. § 27.07(3) (the "Regulation") was promulgated under the Massachusetts Minimum Fair Wage Law and the Massachusetts Overtime Law (Mass. Gen. Laws ch. 151), it does not apply to her claims under the Wage Act. Dkt. 107 ("Opp.") at 14–16.

There is little case law interpreting the Regulation. Recently, a Massachusetts Superior Court noted that no Massachusetts court had yet interpreted the Regulation in the Wage Act context, and so the court looked to the analogous federal time-rounding regulation, 29 C.F.R. § 785.48(b),[3] to guide its analysis. *See Oliveira v. Table Talk Pies, Inc.*, 2023 WL 11664207, at

---

[2] With respect to recording of working time, 454 Mass. Code Regs. § 27.07(3) provides:

An employer may round an employee's starting and stopping time to the nearest five minutes, one-tenth, or quarter of an hour provided that this manner of computing working time averages out over a reasonable period of time so that an employee is fully compensated for all the time he or she actually worked.

[3] The Regulation and 29 C.F.R. § 785.48(b) are largely similar, "permit[ting] timeclock rounding if it 'averages out so that employees are fully compensated for all the time they actually work' and 'will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" *Oliveira v. Table Talk Pies, Inc.*, 2023 WL 11664207, at *3 (Mass. Super. July 6, 2023) (quoting 29 C.F.R. § 785.48(b)).

*3 (Mass. Super. July 6, 2023); *see also id.* (citing *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 170 (2000)) ("[B]ecause typically wage laws are patterned on federal statutes, in determining employee wage claims state courts may look to federal authorities, in this case, the Federal Fair Labor Standards Act, for guidance in interpreting state labor provisions."). The court found that neutral time-rounding was allowed under the Wage Act.[4] *Id.* This approach comports with federal circuit and district courts throughout the country interpreting the FLSA. *See, e.g.*, *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016); *Boone v. PrimeFlight Aviation Servs., Inc.*, 2018 WL 1189338 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1187402 (E.D.N.Y. Mar. 7, 2018); *Bustillos v. Bd. of Cty. Comm'rs*, 2015 WL 8014565, at *20 (D.N.M. Oct. 20, 2015) (finding rounding policy did not violate the FLSA where "undisputed evidence show[ed] that the rounding policy favored neither over [] nor underpayment"), *aff'd sub nom. Jimenez v. Bd. of Cty. Comm'rs*, 697 Fed. Appx. 597 (10th Cir. 2017).

Ms. Darden contends that the Regulation cannot apply to the Wage Act, but such a holding would effectively overturn the Regulation. Under Massachusetts law, "a properly promulgated regulation has the force of law and must be given the same deference accorded to a statute." *Glob. NAPs, Inc. v. Awiszus*, 457 Mass. 489, 496 (2010). Courts are directed to read statutes and regulations in harmony. *See McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 168 (1st Cir. 1987) ("In interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions.").

---

[4] The court ultimately denied summary judgment on the Wage Act claims because there was undisputed evidence that the policy at issue was not neutral. *Id.*

There is no conflict between the Regulation and the Wage Act. "The 'purpose' of the Wage Act is 'to prevent the unreasonable detention of wages,' not to 'prescribe any particular method by which employees must be paid their earned wages.'" *Grogan*, 552 F. Supp. 3d at 146 (citations omitted); *see also Luz v. Bayada Home Health Care, Inc.*, 2024 WL 3030293, at *3 (Mass. Super. Ct. June 3, 2024) ("'[T]he Wage Act requires no more than that employees be paid on a timely basis and in accordance with the terms of their agreement with their employers,' subject of course to all statutory minimum wage and overtime requirements." (citations omitted)). The Regulation permits timeclock rounding to calculate earned wages. Read together, the Regulation sets parameters by which an employer may calculate earned wages, and the Wage Act requires timely payment of those earned wages. *See Grogan*, 552 F. Supp. 3d at 146 (describing 454 Mass. Code Regs. § 27.02—an earlier section of the same chapter as the Regulation—as "[t]he implementing regulations for the Wage Act" and applying this regulation to Wage Act claims); *see also Mansfield v. Pitney Bowes, Inc.*, 2013 WL 947191, at *3 (D. Mass. Mar. 12, 2013) (noting that "the language of Mass. Gen. L. c. 149 § 148 . . . [could] narrowly . . . be viewed as a rule about timing of payments").

In the alternative, Ms. Darden argues that the Regulation should be read to require that the "reasonable period" be limited to the Wage Act's six- or seven-day window, in order to "harmonize" the statute and regulation. Opp. at 17. However, as described above, there is no conflict between the Wage Act and the Regulation. Further, reading such a narrow time window into the Regulation would "undercut the purpose and would gut the effectiveness of a rounding policy" by "requir[ing] employers to engage in the very mathematical calculations that the [] rounding regulation serves to avoid." *Corbin*, 821 F.3d at 1077 (rejecting claim that the FLSA rounding regulation required that *every* employee gain or break even over *every* pay period or set

of pay periods analyzed). As the Ninth Circuit also noted, this would "unfairly reward[] strategic pleading, permitting plaintiffs to selectively edit their relevant employment windows to include only pay periods in which they may have come out behind while chopping off pay periods in which they may have come out ahead." *Id.* As such, timeclock rounding is permissible under the Wage Act, subject to the requirements under the Regulation.[5]

### B.    Defendants' Rounding Practices are Neutral

Having determined that the Wage Act permits timeclock rounding, the key question is whether Defendants' rounding practices are neutral. Ms. Darden concedes that Defendants' policy is neutral on its face, instead arguing that Defendants' rounding is not neutrally applied. Opp. at 6–10.

The FLSA regulations[6] and the Regulation require that timeclock rounding "averages out so that an employee is fully compensated for all the time they actually worked . . . over a [reasonable] period of time." 29 C.F.R. § 785.48(b); 454 Mass. Code Regs. § 27.07(3). Other district courts have found that an employer's rounding practices are lawful if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. *See Boone*, 2018 WL 1189338, at *8 (finding analysis of the data for the putative class as a whole revealed that the policy was neutral as applied, where rounding tended to benefit or have no impact on the majority of employees' time); *Bustillos*, 2015 WL 8014565, at *20 (finding rounding policy did not violate the FLSA where "undisputed evidence show[ed] that

---

[5] At oral argument, Ms. Darden conceded that no court has applied her interpretation of the Wage Act and that a holding that determines the Wage Act does not permit neutral timeclock rounding, or only permits rounding within an individual pay period, would effectively write new requirements into the Wage Act. The Court declines to expand the requirements of the Wage Act in this manner.

[6] Ms. Darden concedes that the FLSA permits timeclock rounding to the nearest quarter hour, so long as the rounding practices are neutral both facially and as applied. Opp. at 5.

the rounding policy favored neither over[ ]nor underpayment"); *Contini v. United Trophy Mfg., Inc.*, 2007 WL 1696030, at *4 (M.D. Fl. June 12, 2007) ("The time clock rounding was equally applied to all Defendant's employees, and worked both to the benefit and detriment of the employees (i.e., you could gain or lose up to 7 minutes of time), and therefore is not a violation of the FLSA."); *East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998) (finding that employer's rounding policy complied with FLSA rounding regulation where the system did not credit all time worked but also credited time not actually worked).

In contrast, rounding policies are not neutral where they favor the employer and systematically undercompensate employees. *See Houston v. Saint Luke's Health System, Inc.*, 76 F.4th 1145, 1150 (8th Cir. 2023) (denying summary judgment where "most employees and the employees as a whole fared worse under the rounding policy than had they been paid according to their exact time worked"); *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 614 (W.D. Va. 2019) (finding that disciplinary policy requiring employees to clock in seven minutes prior to a shift, disciplining employees for clocking in after a shift, and allowing, but not guaranteeing, employees the right to clock out seven minutes prior to the end of their shift might have created an inequity in the rounding policy when applied); *Binissia v. ABM Indus.*, 2014 WL 793111, at *5 (N.D. Ill. Feb. 26, 2014) (finding that rounding policy that "rounded up to fifteen minutes away for pre-shift work but allowed only a five minute grace period if an employee arrived late" was not facially neutral); *Eyles v. Uline, Inc.*, 2009 WL 2868447, at *4 (N.D. Tex. Sept. 4, 2009) (granting summary judgment for plaintiff where defendant's rounding policy "encompasse[d] only rounding down"), *aff'd*, 381 Fed. Appx. 384 (5th Cir. 2010); *Brown v. L&P Indus., LLC*, 2005 WL 3503637, at *6 (E.D. Ark. Dec. 21, 2005) ("Because [employer's] method of rounding was based on [her] knowledge of [each] employee rather than a mathematical formula,

employer's practice of rounding its employees' work time may not have comported with the requirements of the FLSA." (internal quotation marks omitted)).

There is no dispute that the majority of employees benefited from Defendants' timeclock rounding. Pl.'s Resp. to Defs.' SOF ¶¶ 38–39. Ms. Darden contends that Defendants' statistical analysis cannot support summary judgment, because "[a]t best, this suggests that a majority of the class did not suffer damages from what was otherwise a potentially unlawful rounding policy, but it does not absolve the Defendant of liability at the summary judgment stage for the undercompensation of approximately 40% of the [employees]." Opp. at 7 (citing *Eddings v. Health Net, Inc.*, 2012 WL 994617, at *5 (C.D. Cal. Mar. 23, 2012)). However, in *Eddings*, the court had already determined that there was a genuine issue as to whether the policy was facially neutral. *Eddings*, 2012 WL 994617, at *4. As Ms. Darden both concedes that Defendants' policy is facially neutral and does not contest the statistics themselves, the Court may rely on the analysis to assess whether the policy is neutral as applied. *See Boone*, 2018 WL 1189338, at *9 (finding analysis of the data for the putative class as a whole revealed that the policy was neutral as applied, where rounding tended to benefit or have no impact on the majority of employees' time).

Here, the undisputed statistical analysis demonstrates that Defendants' rounding policy is neutrally applied. Much like in *Boone*, 53.8% of Defendants' employees gained time or broke even as a result of the timeclock rounding over the approximately three years at issue. *Id.* at *2, 8 (finding policy neutral where 58.5% of all employees had net-neutral or net-positive rounding results over approximately three years); *cf Houston*, 76 F.4th at 1151 ("[The rounding policy] resulted in lost time for nearly two thirds of employees, and those employees lost more time than was gained by their coworkers who benefited from rounding. This remains the case whether we look at a two-year, three-year, or six-year period."). Ms. Darden's focus on the 46.2% of

employees whose time was rounded down is unavailing.  That some employees during the three years at issue were undercompensated does not overcome the undisputed fact that the majority were overcompensated and that the net overcompensation was higher than the net undercompensation.  *See Utne v. Home Depot U.S.A., Inc.*, 2017 WL 5991863, at *3 (N.D. Cal. Dec. 4, 2017) ("[F]ederal regulations do not require that every employee gain or break even in every pay period.  In other words, that rounding results in net undercompensation of some employees during a given time period does not render the practice unlawful as long as it averages out 'in the long-term.'").

Additionally, that Ms. Darden as an individual suffered losses from Defendants' timekeeping policy is insufficient to demonstrate that the policy fails to satisfy the neutrality requirement.  *See Boone*, 2018 WL 1189338, at *9 ("Plaintiff cannot defeat summary judgment on her rounding claim by having the Court focus solely on *Plaintiff's* time entries" (emphasis in original)); *Corbin*, 821 F.3d at 1077 ("If the rounding policy was meant to be applied individually to each employee to ensure that no employee ever lost a single cent over a pay period, the regulation would have said as much.").  There is no dispute that Ms. Darden is an outlier: 99.399% of the 1,165 analyzed employees experienced more beneficial rounding outcomes than Ms. Darden.  Pl.'s Resp. to Defs.' SOF ¶ 40.  But whether a rounding practice is neutral does not turn on one individual's outcomes.  *See Boone*, 2018 WL 1189338, at *9; *Corbin*, 821 F.3d at 1077; *Utne*, 2017 WL 5991863, at *3 ("Although [the plaintiff] himself experienced a net loss of compensation over the proposed class period, that will not defeat summary judgment if the rounding policy overall can be shown to be neutral.").

In the face of Defendants' undisputed evidence that the majority of employees benefit from this rounding policy, Ms. Darden fails to identify any evidence to suggest that Defendants'

policy results in a systematic underpayment of wages, such as disciplinary policies that impacted the rounding, evidence of monitoring by Defendants to ensure that the practice was beneficial to the employer, or evidence of supervisors' editing time records.  *See, e.g.*, *Houston*, 76 F.4th at 1151 (overturning grant of summary judgment where nearly two thirds of employees lost time as a result of time rounding and where those employees lost more time than was gained by their coworkers who benefited from rounding); *Hardy*, 377 F. Supp. 3d at 614 (finding that disciplinary policy requiring employees to clock in seven minutes prior to a shift, disciplining employees for clocking in after a shift, and allowing, but not guaranteeing, employees the right to clock out seven minutes prior to the end of their shift might have created an inequity in the rounding policy when applied).

Based on the foregoing, the Court finds that Ms. Darden has failed to raise a genuine issue of material fact on whether Defendants' timekeeping system did not result over a reasonable period of time in failure to compensate its employees properly for all the time they have actually worked.

## C. **Defendants' Neutral Rounding Policy Defeats Plaintiff's Remaining Claims**

Defendants argue that because their rounding practice is neutral and permissible under the FLSA and Wage Act, all of Ms. Darden's remaining claims fail as a matter of law.[7]

### 1. **Accurate Pay Stubs**

Under the Wage Act, employers must issue pay slips that accurately indicate, among other things, the number of hours worked.  Mass. Gen. Laws ch. 149, § 148; Mass. Gen. Laws ch. 151, § 15.  Ms. Darden argues that the pay stubs needed to identify the precise number of hours she actually worked, not the rounded time.  Opp. at 20.  But as described above, Defendants' neutral

---

[7] Though Ms. Darden contents that Defendants waived argument on Counts III–V by failing to adequately argue each count in their opening memorandum, Opp. at 20, the Court is under no obligation to disregard the point. *See Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 190 n.2 (D. Mass. 2019) ("The Court will not deem the argument waived here, as [the movant] did in fact raise—although perhaps "barely"—the issue . . . in its initial memorandum.").

timeclock rounding complied with their Wage Act obligations to fully and timely pay their employees. As such, the Court finds that Defendants complied with their obligation under the Wage Act to issue accurate paystubs. Any other interpretation would conflict with the Regulation's allowance of rounding to calculate earned wages. *See McCuin*, 817 F.2d at 168 ("In interpreting statutes and regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions."). Thus, for the reasons described above, summary judgment is appropriate on Count III.[8]

### 2.    __Breach of Contract__

"To show a breach of contract, 'the plaintiff must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach.'" *Klauber v. VMware, Inc.*, 80 F.4th 1, 14 (1st Cir. 2023) (citations omitted) (applying Massachusetts law). Neither party addresses the validity of the oral contract alleged, so the Court will assume, without deciding, that there is a valid, binding contract that governs Ms. Darden's employment. Defendants contend that they did not breach the contract because timeclock rounding is permissible under state and federal law. Defs.' Memo. at 18; Dkt. No. 110 ("Defs.' Reply") at 6. Ms. Darden alleges that the contract required Defendants to pay her for "all hours" worked, rather than rounded hours. Opp. at 20. Neither party alleges that the contract dictated how "all hours" would be calculated. As discussed in more detail above, state and federal law permit Defendants to calculate employees' time by rounding. While Ms. Darden contends that she did not consent to be paid only for rounded time, she has provided no argument or evidence that would support interpreting the "all hours" term as providing for a wage-calculation scheme

---

[8] Additionally, Defendants are entitled to summary judgment on Count III on the basis that there is no private right of action to enforce Mass. Gen. Laws ch. 151, § 15. *See Luz*, 2024 WL 3030293, at *6 (citing *Grogan*, 552 F. Supp. 3d at 147); *see also id.* (explaining that the failure to comply with Mass. Gen. Laws ch. 151, § 15 is only "subject to a civil citation and fine by the Attorney General," not a private right of action).

contrary to the generally applicable Regulation. *See Greene v. Ablon*, 794 F.3d 133, 147 (1st Cir. 2015) (applying Massachusetts law) ("[T]he formation of a valid contract under Massachusetts law requires objective, not subjective, intent."). Thus, summary judgment is appropriate on Count IV.

### 3. <u>Unjust Enrichment</u>

Unjust enrichment requires "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (citations omitted). Defendants argue that because timeclock rounding is permissible under state and federal law, Ms. Darden cannot show that Defendants were unjustly enriched. Defs.' Memo. at 18; Defs.' Reply at 6. Ms. Darden contents that it would be unjust for Defendants to retain 12 hours of pay that she would have earned but for Defendants' timeclock rounding when she performed her work under "the understanding that she would be paid an hourly rate for all hours she worked." Opp. at 21. Having determined that the Wage Act permits the type of neutral rounding practices Defendants employed, there is no inequity in Defendants' policy. Thus, summary judgment is appropriate on Count V.[9]

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

---

[9] Furthermore, Ms. Darden's claim of unjust enrichment is precluded by the Wage Act. *See DaSilva v. Border Transfer of MA, Inc.*, 227 F. Supp. 3d 154, 160 (D. Mass. 2017) ("The Massachusetts Wage Act is available as a statutory remedy, and that is sufficient to bar unjust enrichment."); *see also Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (noting that the viability of the remedy at law "is beside the point" and that "mere availability" of the remedy at law bars unjust enrichment), *aff'd*, 527 Fed. Appx. 20 (1st Cir. 2013).

**So Ordered.**

/s/ Brian E. Murphy

Brian E. Murphy

Dated:  March 26, 2025                    Judge, United States District Court